**Dan STAINBROOK, Plaintiff-Appellant,**

**v.**

**George BERRY, Defendant-Appellee.**

**No. 11410.**

United States Court of Appeals
Seventh Circuit.

Dec. 6, 1955.

---

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In the words of plaintiff's counsel, this action was brought to recover damages for personal injuries occasioned by alleged negligence of defendant in inviting plaintiff to use an elevator in defendant's building which defendant knew to be unsafe. At the close of plaintiff's evidence, the district court directed a verdict finding the defendant not guilty, and entered judgment thereon, from which plaintiff has appealed to us.

Considered in the light most favorable to plaintiff, there was evidence tending to prove the pertinent facts which we now set forth.

Defendant, a resident of Quincy, Illinois, on and for several years prior to May 1, 1951 owned a building in Oskaloosa, Iowa. It faced south. On its west side was an alley. On the second floor were certain apartments. In the northwest corner of the first floor was a room which opened on the alley. Above that room was a second floor area which by means of two small windows opened onto the roof.

The elevator in question (which is also referred to as a hoist) ran from the first floor room to the second floor area and was raised by means of a chain hoist suspended from above. The hoist was powered by a motor and was controlled by two hemp ropes which hung down to the first floor. The cage had a floor about 8 feet square, and sides, a back and a roof of wooden boards. It had an open front without gates or doors. A post, 8 by 8 inches, on each side acted as a guide on which the cage slid up and down. There was no shaft or enclosure around the cage, guides or hoist. When not in use, the cage rested upon the concrete floor of the room, there being no pit beneath it. The chain hoist was hooked from the top of the cage to a cupola in the second floor area about 30 feet from the ground floor.

This hoist was installed in 1946 by defendant and his then partner Russell

Alfred M. Wooleyhan, Quincy, Ill., Harold J. Fleck, Oskaloosa, Iowa, Penick, Wooleyhan & Nielson, Quincy, Ill., Fleck & Jones, Oskaloosa, Iowa, for plaintiff-appellant.

Carl G. Schmiedeskamp, Quincy, Ill., for defendant-appellee.

Good, who were operating a chicken hatchery in the building. They used it for carrying chicken crates and other articles. Thereafter an elevator inspector examined the hoist and told Good that the elevator should not be used for passengers, and also that safety stops, lock stops or other similar safety devices should be installed. This information was relayed to defendant by Good. The lock stops or other safety devices were not installed because of the expense. Later another inspector looked at the hoist. He merely stated that it should be used only for freight.

In August 1949 defendant made a written lease of the entire building to the local Moose lodge for a period of five years. This lease did not give the defendant any right to enter the premises for any purposes and did not obligate defendant to make repairs. Plaintiff at all times material to this case was a member and trustee of the lodge, as well as custodian and janitor for the building. He became a subtenant of the lodge for basement space in the building, where he conducted a mattress business.

About the time that defendant was moving out of the building to make way for the lodge tenant, plaintiff was on the premises performing his duties for the lodge. When defendant was removing his hatchery equipment, the hoist and chain previously attached to the elevator were removed and placed on the floor. A few days later, at plaintiff's request, Gus Abbott and his two helpers, with plaintiff's assistance, put the hoist and chain back in operating position. Until then it had lain on the floor and was completely out of operation. This reinstallation took place after the Moose had taken possession of the building and plaintiff had become a subtenant of the Moose.

About two months later defendant called at the clubhouse and watched the members of the lodge doing painting and other work in the clubroom. Defendant said to plaintiff that he understood that he was going to do the janitor work and look after things for the lodge, and he asked plaintiff if he would look after the roofs of the building because defendant lived in Quincy. Plaintiff agreed to do so and defendant said that he would "make it right with me and pay me for my trouble." Defendant never thereafter paid plaintiff anything and plaintiff never asked for any payment. After this conversation plaintiff and defendant were in the room where the elevator was and defendant told plaintiff how to operate it by pulling the ropes. Defendant took plaintiff to the second floor on the elevator and they looked at that part of the building. Defendant said he did not think that rain coming through an opening in the wall on the second floor would amount to anything, because there was a cement floor there and the water would run over to the drain in the middle of the floor if any came in. He then ran the elevator down to the first floor with both men on it.

At one time plaintiff, on behalf of the Moose lodge, showed the second floor to one Jackson for the purpose of renting it to him for dead storage.

Access to the roof of the building was available through a hallway serving the apartments on the second floor which had a door leading out to the roof, as well as by a ladder reaching from the ground to the roof on the west side of the building.

Until May 1, 1951, plaintiff continued his mattress work in the building and also reported to defendant from time to time as to needed building repairs, which were made following correspondence and telephone conversations with defendant, and during this time plaintiff used the elevator three or four times without incident. During that period the elevator received no maintenance care or repair.

On May 1, 1951, plaintiff had gone up on the building roof to inspect it for hail-storm damage and noticed that the two windows opening out from the second-story area to which the elevator ran, had become unfastened and swung outward. He pushed them shut but they would not stay, as they fastened only from the inside. Plaintiff then went down the aforesaid ladder, into the build-

ing, up in the elevator to the upper room and fastened the windows. In returning down, the elevator descended about four feet, stopped, and then suddenly fell to the cement floor of the room below. Upon regaining consciousness, plaintiff was sitting in the elevator cage with fallen boards from the cage roof on his head and shoulder. Through the broken roof he saw the hoist still hooked to the top of the building in the usual place, with the chain hanging down and unbroken.

There was evidence that there were no lock stops on the elevator at the time of the accident.

Plaintiff was injured in the accident.

Plaintiff contends that the district court erred in directing a verdict for defendant.

Considering the evidence in a light most favorable to plaintiff, his counsel argues that a duty was imposed upon defendant for the benefit of plaintiff and that defendant's negligent failure to comply with that duty resulted in plaintiff's injury.

█ 1. In the first place, plaintiff contends that there was a relation of employer and employee existing at the time of the accident. While the evidence shows that defendant indicated that he would give plaintiff something for his trouble in looking after the roofs of the building, there is no evidence that defendant ever felt that he was legally bound so to do. Instead there is evidence that he never paid plaintiff anything. There is no evidence that plaintiff thought he was entitled legally to any payment; in fact, he never asked for payment. There is no evidence that the parties understood that defendant was to exercise any control over the manner in which plaintiff performed his alleged duties. We hold that there was no contract for employment, either express or implied.

█ 2. Secondly, plaintiff contends that, because of violations of both the Iowa statutory law and the common law, defendant was guilty of negligence in

having an elevator which lacked proper safety appliances. Whether or not defendant would have been liable for the injury to plaintiff if it had happened prior to the time that defendant moved his equipment from the demised premises and turned them over to the Moose lodge as a tenant, we are not called upon to decide. The evidence in the record shows that the so-called dangerous elevator or nuisance was dismantled and immobilized at the time possession was delivered by defendant to the lodge. Unless the elevator had been thereafter reactivated the injury to plaintiff would never have occurred. The reactivation was done partly by plaintiff himself, when he procured and assisted Abbott and two other men to put the hoist and mechanical equipment in place and rewire the electrical connections. There is no evidence that defendant knew of this reinstallation before or at the time it was done or in any way authorized or consented to it. His last connection with the alleged dangerous instrumentality had been to remove it as a part of the building. After its reinstallation plaintiff, who was in charge of the building as janitor for the lodge, never gave the reinstalled elevator any maintenance. Obviously no special mechanical knowledge is necessary for one to know that the slides on such a device would have to be lubricated periodically to prevent its catching or jamming. Such treatment was not given and on May 1, 1951 plaintiff suffered the accident resulting in his injury. Defendant was living in Quincy, Illinois during all of this time.

We find no significance in the fact that defendant rode with plaintiff on the reinstalled elevator. There is no evidence that defendant at that time knew that the elevator was without lock stops. Even if he was mistakenly of the opinion that whoever had reinstalled the elevator had equipped it with proper safety appliances, plaintiff had no right to substitute for his own knowledge of what was done in the reinstallation the mistaken impression of defendant that

the elevator as reinstalled was safe. Plaintiff was an adult and was able to see what was before him, not only at the time of the reinstallation but at the time that he and defendant rode on the elevator together. He had no right to assume that defendant knew or would be able to find out more about the elevator than plaintiff himself knew or could have seen by his own observation.

From this record it is obvious that on no theory advanced by plaintiff is defendant liable for plaintiff's injury. Hence, the district court did not err in directing a verdict and entering judgment for defendant. The judgment below is

Affirmed.